UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATRINA MARTIN,

                              Plaintiff,

            -against-

NEW AMERICAN CINEMA GROUP, INC.
and MARIE SERRA,

                              Defendants.

Case No. 1:22-cv-05982 (JLR)

**OPINION & ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Katrina Martin ("Plaintiff"), on behalf of herself and all others similarly situated, brings this putative class action against Defendants New American Cinema Group, Inc. ("NACG," doing business as The Film-Makers' Cooperative) and Marie Serra, or MM Serra, (together with NACG, "Defendants") alleging copyright infringement, deceptive acts and practices, trade libel, unfair competition, fraud, and breach of contract under New York law. *See generally* ECF No. 7 ("Compl."). Now before the Court is Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). *See* ECF No. 25. For the reasons described below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Defendant NACG is a New York non-profit cooperation that acts as a "custodian" to "avantgarde and experimental films" and other artistic works for the benefit of its members.

---

[1] Unless otherwise stated, the facts herein are taken from the Complaint and assumed to be true for purposes of this motion. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

Compl. ¶¶ 2, 13.  Specifically, the non-profit's "collection includes over 5,000 film titles by more than 900 filmmakers," including at least one film created by Plaintiff entitled "Hanafuda/Jasper Johns" (the "Film").  *Id.* ¶¶ 4, 13.  Plaintiff contends that the Film is "an original work on celluloid film," or a "16mm film print."  *Id.*  ¶ 15.  Plaintiff also alleges that, since January 6, 1984, she possesses a federal copyright registration for the Film.  *Id.* ¶ 4 (Registration #PA0000206560).[2]

In October 2019, NACG created a digital version of the Film, and rented it to the Carnegie Museum of Art for its exhibit, "An Art of Changes:  Jasper Johns Prints, 1960-2018."  Compl. ¶¶ 15, 17; *see also* ECF No. 10 (news article reflecting museum's exhibit).  Plaintiff's Film played at the museum "continuously . . . from October 20, 2019 through January 20, 2020," and therefore was likely viewed by thousands of members of the public.  *Id.* ¶ 17.  On May 6, 2020, Plaintiff first learned that her Film was included in the exhibit when a representative from the museum told her that the museum had rented the Film from Serra and NACG.  *Id.* ¶ 18.  Plaintiff subsequently learned that "NACG charged the Carnegie Museum of Art only $200" for the rental.  *Id.* ¶ 19.  Plaintiff now contends that her usual charge for a similar showing would have been $850.  *Id.*  When Plaintiff inquired with NACG about the Film's rental to the museum and any royalties to which she was entitled, NACG informed her that she owed $1,470 in "back dues."  *Id.* ¶ 25.  But, according to Plaintiff, she and other putative members of the class do not, and have never had, any obligation to pay the NACG fees or dues.  *Id.*  ¶¶ 21-22.

Plaintiff filed this action on July 14, 2022.  *See* Compl.  In the Complaint – which Plaintiff has styled as a class action on behalf of other artists who have their films in the

---

[2] The registration was filed as an exhibit to the Complaint.  *See* ECF No. 9.

NACG's possession – Plaintiff primarily alleges that Defendant NACG reproduced the Film (and other class members' films) without authorization or knowledge on the part of the copyright holder.  *Id*. ¶ 14.  Plaintiff also alleges that NACG created a "derivative work" when it produced a digital version of her Film by "remastering it from an old 16mm film print." *Id.* ¶ 15.  In particular, Plaintiff alleges that the rented Film was a derivative work because the digitization made the Film "by definition, less sharp than the author's film original," and changed the colors, which are "central to the content of the Film."  *Id.*  In support of her contention that the digitization created a derivative work, Plaintiff also alleges that "[t]here are many considerations in the film-to-digital transfer process, including protectable creative and original steps, of which color is just one."  *Id.*

Finally, the Complaint alleges that NACG's "policy of claiming back dues" instead of providing earned royalties is unauthorized because the arrangement is not a part of her or other putative class members' agreements with NACG.  *See id.* ¶¶ 24-27.  Plaintiff also alleges that some putative class members have no agreements with NACG, and are still being charged back dues.  *Id.*

Together, Plaintiff alleges six claims on behalf of herself and a putative class: (1) copyright infringement under 17 U.S.C. § 504 *et seq.*; (2) deceptive acts and practices in violation of N.Y. G.B.L. §§ 349 and 350; (3) trade libel; (4) common law unfair competition; (5) fraud; and (6) breach of contract.[3]  Notably, the Complaint does not attach any membership agreements or other contracts.

---

[3] The Complaint erroneously refers to both the breach of contract claim and fraud claim as "Count V."  Comp. ¶¶ 69-72.  The Court considers the fraud claim Count V, and the breach of contract claim Count VI.

On October 31, 2022, Defendants moved to dismiss the Complaint on two separate grounds:  first, on the basis that Plaintiff is not alleging a copyright claim but instead a breach of contract claim, and therefore the Court lacks subject matter jurisdiction; and second, on the basis that Plaintiff has failed to state a claim on any of the causes of action alleged in the Complaint.  ECF No. 26 ("Br.").  In support of their motion, Defendants attach NACG's current membership agreement (ECF No. 26-2 ("Current Agreement")), pages from the document that it contends members agreed to in the 1980s (ECF No. 26-3 ("1980s Agreement")), and pages that appear to show Plaintiff's film's undated information sheet (ECF No. 26-4 ("Film Info Sheet")).  Plaintiff filed her opposition to Defendants' motion on November 14, 2022.  *See* ECF No. 28 ("Opp.").  Defendants filed their reply brief on November 21, 2022.  *See* ECF No. 29 ("Reply").

## LEGAL STANDARD

"A district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it . . . .'"  *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  A motion "based solely on the allegations of the complaint or the complaint and exhibits attached to it" is a facial challenge.  *Id*.  On a facial challenge, the court must accept as true all material allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Id*. at 56-57.

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading."  *Id*. at 57; *see Bank of Am. Corp. v. Lemgruber*,

385 F. Supp. 2d 200, 213 (S.D.N.Y. 2005) ("[W]hen resolving issues surrounding its subject matter jurisdiction, a district court is not confined to the Complaint and may refer to evidence outside the pleadings, such as affidavits." (citing *Makarova*, 201 F.3d at 113)).  "In opposition to such a motion, plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject matter jurisdiction].'"  *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57) (internal brackets omitted).  "[D]istrict courts have broad discretion when determining how to consider challenges to subject matter jurisdiction."  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).  But "[w]here a party offers extrinsic evidence that contradicts the material allegations of the complaint, . . . it would be error for the district court to disregard that extrinsic evidence."  *Id.* at 442.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, the facts must be sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal brackets omitted).  The court shall not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

I.     **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants' primary argument for dismissal is that the Court lacks subject matter jurisdiction because Plaintiff's federal copyright claim is just a contract claim, and since the parties are not diverse, there is no basis for federal jurisdiction.  Br. at 5, 7.  Specifically, Defendants assert that Plaintiff, by submitting the Film to NACG and agreeing to its terms of membership, gave NACG a non-exclusive license to distribute the Film.  *Id.* at 7.  In support of their argument, Defendants rely on Plaintiff's undated Film Info Sheet and the Film Makers' Cooperative Catalogue No. 3, which Defendants assert includes the terms of membership at the time Plaintiff submitted the Film to the non-profit.  *See* Br. at 10  (citing Film Info Sheet; 1980s Agreement at 5-6).  They also appear to contend that Plaintiff has agreed to terms in the Current Agreement, which is a document "made available to the public . . . and all of its members" and which is "substantially similar" to the 1980s Agreement.  Br. at 2.  Plaintiff argues, in response, that she only gave NACG permission to rent the single original copy of the Film, and by creating the digital copy and renting it to the museum, Plaintiff exceeded the scope of that limited agreement, constituting copyright infringement.  Opp. at 6-8.[4]

"When a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked."  *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 355 (2d Cir. 2000).  "A suit 'arises under' the Copyright Act for purposes of federal question jurisdiction if 'the complaint is for a remedy expressly granted by the Act, *e.g.*, a suit

---

[4] Contrary to arguments made by Plaintiff in her opposition (*see* Opp. at 5), on a motion to dismiss for subject matter jurisdiction, a court may refer to evidence beyond the pleadings. *See Makarova*, 201 F.3d at 113.

for infringement or for the statutory royalties, for record reproduction . . . or the complaint
. . . asserts a claim requiring construction of the Act . . . .'" *Pot Luck, L.L.C. v. Freeman*, No.
06-cv-10195 (DAB), 2009 WL 693611, at *2 (S.D.N.Y. Mar. 10, 2009) (quoting *Bassett*, 204
F.3d at 349).  However, "a party cannot seek damages for violation of copyright law if the use
was authorized by the copyright owner." *Leutwyler v. Royal Hashemite Ct. of Jordan*, 184 F.
Supp. 2d 303, 306 (S.D.N.Y. 2001) (citing *Graham v. James*, 144 F.3d 229, 236 (2d Cir.
1998)).  Nevertheless, when a licensee exceeds the scope of its license, "a copyright owner
may bring a claim for infringement . . . ." *Id.*; *see also Small Bus. Bodyguard Inc. v. House of
Moxie, Inc.*, 230 F. Supp. 3d 290, 305 (S.D.N.Y. 2017) ("While a valid license may serve as a
defense to infringement, 'the fact that a party has licensed certain rights to its copyright to
another party does not prohibit the licensor from bringing an infringement action where it
believes the license is exceeded or the agreement breached.'" (quoting *Tasini v. N.Y. Times
Co.*, 206 F.3d 161, 170 (2d Cir. 2000))).

Here, Plaintiff has facially alleged a claim arising under the Copyright Act, 17 U.S.C.
§ 501, *et seq.*  *See* Compl. ¶¶ 4, 42-49.  While Plaintiff separately asserts a claim for breach of
contract due to NACG's attempt to collect back pay (*see id.* ¶¶ 71-72), she does not allege that
the distribution of the rental violated that contract.  Rather, Plaintiff alleges that – despite
giving her Film to NACG at an unspecified time and on unspecified terms – NACG did not
have authorization to create a digital copy of the Film or otherwise reproduce the film.  *See id.*
¶¶ 14-18, 20.[5]  Defendants argue that the terms of Plaintiff's agreement with NACG permitted

---

[5] Plaintiff's allegation that she was not permitted to set the rental price for the Film (Compl.
¶ 19), is belied by the Film Info Sheet she appears to have submitted with her Film, which
clearly sets the rental price at either $212 or $120.  *See* Film Info Sheet at 2.  As previously
stated, a court may look to evidence beyond the pleadings in considering a Rule 12(b)(1)
motion.  *See supra* n.4.  Moreover, the contracts are incorporated by reference into the
Complaint, which alleges a breach of contract.  *See, e.g.*, *Subaru Distribs. Corp. v. Subaru of*

them to create the digital version and rent it without prior authorization.  *See* Br. at 7-11.  In

support of this argument, Defendants point to the 1980s Agreement and Film Info Sheet.  *Id.*

But a review of those materials does not provide clarity as to the scope or terms of this

agreement.  For instance, the 1980s Agreement implies that, after a filmmaker submits their

work, the "[p]rints remain the property of the film-maker, available for his own use or recall,

subject only to prior booking commitments."  1980s Agreement at 5-6.  It also states that

"[n]o contracts are signed between the Cooperative [NACG] and member film-makers."  *Id.* at

6.  The Current Agreement also does not delineate the terms under which NACG is permitted

to distribute films.  *See generally* Current Agreement at 1 (requiring only depositing of film

with NAGC to list work for distribution, and noting that agreement is non-exclusive).

In light of the parties' dispute over the terms of the license, "[u]nfortunately, the

meaning of this license is sufficiently ambiguous that it cannot be determined on the face of

the documents whether the publication falls within the license."  *Leutwyler*, 184 F. Supp. 2d at

306.  Therefore, on the face of the Complaint and considering the contracts at issue, Plaintiff

alleges copyright infringement that "exceeds . . . the scope of the license," and therefore the

claim arises under federal law for purposes of federal jurisdiction.  *Marshall v. New Kids On

The Block P'ship*, 780 F. Supp. 1005, 1009-10 (S.D.N.Y. 1991) (denying motion to dismiss

for lack of subject matter jurisdiction where scope of license was in dispute); *see also

Leutwyler*, 184 F. Supp. 2d at 307 (denying motion to dismiss where scope of license was

ambiguous and noting that "[t]estimony by the parties about what they understood the contract

---

*Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint,
the court may consider any written instrument attached to the complaint as an exhibit or
incorporated in the complaint by reference, as well as documents upon which the complaint
relies and which are integral to the complaint."); *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 90 F.
Supp. 2d 401, 407 n.19 (S.D.N.Y. 2000) (considering contract incorporated by reference into
complaint which alleged breach of contract).

to mean, under these circumstances, may well be helpful"); *E. Broad. Am. Corp. v. Universal Video, Inc.*, No. 04-cv-05654 (DGT), 2006 WL 767871, at *2 (E.D.N.Y. Mar. 24, 2006) (rejecting argument that court lacked subject matter jurisdiction because the "complaint makes clear that the licensing agreement . . . was no longer in effect," and it therefore pleaded a copyright claim).

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## II.     Motion to Dismiss for Failure to State a Claim

Having determined that there is subject matter jurisdiction at this stage, the Court now turns to whether the Complaint states a claim upon which relief can be granted under Rule 12(b)(6) for the six causes of action alleged in the Complaint.

### A.  Copyright Claim

"To establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Defendants argue that Plaintiff has failed to state a claim for copyright infringement because, under the membership agreement, NACG was permitted to distribute the Film, and the creation of a digital version of the Film was not a "derivative work" or other act of infringement.  *See* Br. at 9-11.  Plaintiff argues that her Complaint sufficiently alleges infringement, beyond the scope of a license, because in making the digital version of the film, creative decisions had to be made.  *See* Opp. at 9 (citing Compl. ¶ 15).

While "authorization to copy copyrighted material – *i.e.* through possession of an applicable license – is generally viewed as an affirmative defense to a claim of copyright

infringement," the Second Circuit has clarified that "when the *existence* of a license is not in question, a copyright holder must plausibly allege that the defendant exceeded particular terms of the license." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104-05 (2d Cir. 2019). Here, the parties do not dispute that *some* type of license existed between the parties. For instance, Plaintiff alleges in the Complaint that NACG had custody of her Film (Compl. ¶ 13), and at least some of the class members had membership forms (*id.* ¶ 21). In her opposition to the motion to dismiss, Plaintiff concedes that "[t]he parties agree that there is an arrangement between Plaintiffs and Defendants whereby Defendants can rent out the physical copies of the Films that authors have deposited with Defendants, retain a portion of the rental fees, and pay a portion of the fees to the authors." Opp. at 11 n.4. Indeed, Defendants agree that a license to distribute the Film existed. *See generally* Br. However, Plaintiff also alleges that whatever agreement was in place did not permit the reproduction of the Film in the digital format rented to the museum. Compl. ¶¶ 14-17. Moreover, the Complaint specifies that the steps taken to transform the Film into a digital file involved "protectible creative and original steps" such as determining the color in the new medium. Compl. ¶ 15. While, as previously discussed, *supra* Section I, the scope of the license remains in dispute, for purposes of a motion under Rule 12(b)(6), Plaintiff has sufficiently alleged that Defendants "took actions beyond the scope of the Licensing Agreement, and such contentions can, if proved, sustain a claim for copyright infringement." *Fioranelli v. CBS Broad. Inc.*, 232 F. Supp. 3d 531, 538 (S.D.N.Y. 2017). Accordingly, as to the copyright claim, Defendants' motion is denied.

**B. Breach of Contract Claim**

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938

F.3d 8, 12 (2d Cir. 2019) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).  "It is axiomatic under New York law . . . that '[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties.'" *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)).  To understand the intent of the parties, the Court looks to the "language of their agreement," *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000), and considers "the threshold question . . . whether the terms of the contract are ambiguous," *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).  "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).  "Contract language is ambiguous when it is 'capable of more than one meaning when viewed, objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Bank of N.Y. Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635 (S.D.N.Y. 2007) (quoting *Seiden Assoc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)).

Defendants argue that the Complaint fails to state a claim for breach of contract because it "contains no allegations discussing how the [NACG] obtained Plaintiff's motion picture," and because the terms of Plaintiff's agreement at the time she gave her Film to NACG (the 1980s Agreement) state that they have a non-exclusive right to rent the Film to third parties.  Br. at 11.  Contrary to Defendants' argument, however, the terms of the 1980s Agreement do not expressly state the precise terms of the contract.  In fact, as has previously

been described in this Opinion, the exact terms of the agreement – and the scope of the

agreement – are ambiguous.

The terms of Plaintiff's agreement with NACG span decades, and appear to have

changed over the years, inviting ambiguity.  For instance, the 1980s Agreement tells members

(like Plaintiff) that "[p]rints remain the property of the film-maker, available for his own use

or recall, subject only to prior booking commitments"; and "[n]o contracts are signed between

the Cooperative [NACG] and member film-makers."  1980s Agreement at 5-6.  That

agreement expressly states that "[r]entals paid to the Cooperative [NACG] are credited 75% to

[the] film-maker's account, with 25% retained to help defray our operating expenses."  *Id.* at

6.  Under the Current Agreement, filmmakers "receive 60% of [their] rentals, while 40% goes

to the [NACG] for overhead."  Current Agreement at 1.  There is no mention of dues in the

1980s Agreement, but the Current Agreement specifically says that "[t]o join the Coop

[NACG] as a filmmaker, all you need is a film or video" and the "membership fee is $40

annually."  *Id.*  In light of these different terms, and the lack of clarity over when these

contracts governed the parties' relationship, the terms of the applicable contract appear to be

ambiguous.  *See, e.g.*, *Garson v. Garson*, No. 16-cv-06167 (KPF), 2017 WL 2915386, at *8

(S.D.N.Y. July 6, 2017) (concluding that, "while the oral agreement and the June 4 Letter

plausibly constitute a valid contract, there exists ambiguity in the terms of that contract,

particularly when considered" with other evidence of the contract).

Despite these ambiguous terms, the parties agree that there is a contract in place under

which Plaintiff provided her Film to NACG to rent, and under which NACG would retain a

portion of the rental profits, and provide a portion of the profits to Plaintiff.  *See, e.g.*, Opp. at

11 n.4.  Plaintiff also alleges the existence of a contract:  the Complaint alleges that "NACG is

the counter-party to, and in possession of, the membership forms that each author submitted

when providing their films to NACG for the collection" (Compl. ¶ 21), and that there is an agreement under which members – regardless of whether they had a membership form – provided their works to NACG (*id.* ¶¶ 21-22, 27).  Plaintiff performed her obligations under the contract by providing her Film to NACG.  Compl. ¶ 13; *see also id.* ¶ 27.  But Plaintiff alleges that the agreements do not include obligations to pay dues – or at least that she was never aware of them.  *See id.* ¶¶ 23-27.  Therefore, NACG allegedly breached the agreement by "withholding . . . earned royalties on the pretense of owed dues," which are not in fact owed under the terms.  *Id.* ¶¶ 23-27.  Having alleged the existence of a contract, breach, and damages from that breach, Plaintiff has adequately pleaded a claim for breach of contract, and the motion to dismiss this claim is denied.

### C.  Fraud Claim

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages."  *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 568 (S.D.N.Y. 2022) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015)).  Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  To meet this "heightened pleading standard, the complaint must: (1) detail the events giving rise to the fraud, such as the statement or omission that is alleged to be fraudulent, the identity of the speaker, the location of the fraud, and the reason the statement is fraudulent; and (2) allege facts 'that give rise to a strong inference of fraudulent intent.'"  *Smith*, 583 F. Supp. 3d at 568 (quoting *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22-cv-02716 (CM), 2022 WL 14061542, at *2 (S.D.N.Y. Oct. 24, 2022) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Additionally, "[w]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 511 (S.D.N.Y. 2016) (internal citation omitted); *see Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." (internal citation omitted)).  Therefore, to state a claim for fraud when also alleging a breach of contract, "a plaintiff must either (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Green Star Energy Sols., LLC v. Edison Properties, LLC*, No. 21-cv-2682 (LJL), 2022 WL 16540835, at *5 (S.D.N.Y. Oct. 28, 2022) (internal brackets and ellipses omitted) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

Plaintiff's breach of contract and fraud allegations are two sides of the same coin. The only difference between the contract claim and the fraud claim, according to Plaintiff, is whether or not a purported class member had a contract with Defendants.  *See* Comp. ¶¶ 23-27; Opp. at 15-16.  Plaintiff alleges that Defendants breached their contracts by "withholding .

. . earned royalties on the pretense of owed dues," which are not in fact owed under the terms

of the agreements.  Compl. ¶ 27; *see also id.* ¶¶ 23-26.  Plaintiff alleges that she has been

defrauded based on the same facts that form the basis of her breach of contract action.  The

fraud allegations, therefore, "go to the core of the breach of contract claim:  the defendants did

not intend to carry out" the alleged agreement to pay royalties to its members.  *Graham*, 156

F. Supp. 3d at 512.  Thus, Plaintiff's fraud claim is redundant, and her sole remedy is for

breach of contract.  *See id.* at 511.

Plaintiff separately alleges that Defendants engaged in fraud when Defendants

withheld royalties on the basis of owed dues for "authors without an agreement."  Compl.

¶ 27.  Specifically, Plaintiff alleges that Defendants made false statements that putative class

members owed dues, and authors relied on those false statements by not seeking royalties for

their rented works.  *Id.* ¶ 26.  But prior to certifying a class, the Court can only consider the

claims that apply to the named plaintiff; it does not have jurisdiction to consider alleged fraud

claims of purported class members until a class has been certified.  *See infra* Section II.F.

Even if the fraud claim was not "simply a breach of contract claim in . . . tort

clothing," *Telecom Int'l Am., Ltd.*, 280 F.3d at 196, Plaintiff has also clearly failed to meet the

heightened pleading standards of Rule 9(b).  In *Smith v. Apple*, the Court concluded that a

complaint which did "not specify which statements the plaintiffs viewed or when, . . . [or]

explain in what way those statements were fraudulent," failed to plead fraud with

particularity.  583 F. Supp. 3d at 568.  Here, Plaintiff has not alleged what fraudulent

statements were made, when they were made, or any other particular facts associated with the

fraud; she has merely alleged that she did not agree to pay dues, and therefore Defendants'

withholding of royalties on that basis was fraudulent.  *See* Opp. at 15.  Moreover, Plaintiff has

failed to plead with particularity that Defendants acted with the requisite fraudulent intent.

Instead, Plaintiff makes conclusory, non-specific allegations that "NACG makes representations" that members owe dues, despite "know[ing] this is false and that the [members] do not owe dues, because NACG has no contracts, agreements, or membership applications from such authors containing consent to be charged dues." Compl. ¶ 24. "But 'the simple knowledge that a statement is false is not sufficient to establish fraudulent intent . . . .'" *Kelly v. Beliv LLC*, No. 21-cv-08134 (LJL), 2022 WL 16836985, at *10 (S.D.N.Y. Nov. 9, 2022) (internal brackets omitted) (quoting *Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018)). Additionally, the 1980s Agreement and Current Agreement, which are incorporated by reference into the Complaint, do not bolster Plaintiff's allegations of fraudulent intent. Rather, they support the opposite inference: that Defendants may have believed the terms of Plaintiff's membership – and all others in the purported class – included payment of dues. In sum, in light of the ambiguity in the parties' contract, and in light of Plaintiff's failure to specifically allege facts surrounding the fraudulent statements, Plaintiff's Complaint fails to meet the heightened pleading standards required for allegations of fraud. Count V, Plaintiff's fraud claim, is dismissed.

### D. Deceptive Acts and Practices in Violation of New York Law (N.Y. G.B.L. §§ 349 and 350)

Under New York law, to state a claim for "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state," *see* N.Y. Gen. Bus. Law § 349(a), a plaintiff must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Smith*, 583 F. Supp. 3d at 566 (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020)). "New York General Business Law § 349 applies solely to matters affecting the consumer public at large." *Kirk v. Heppt*, 532 F. Supp.

2d 586, 591 (S.D.N.Y. 2008) (citing *Vitolo v. Mentor H/S. Inc.*, 213 F. App'x. 16, 17 (2d Cir.

2007)).  "Private contract disputes, unique to the parties, are not covered by the statute." *Id.*

(citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d

20, 24-25 (1995)).

Plaintiff alleges "deceptive acts" including the creation of a digital version of

Plaintiff's Film for the exhibit at the museum, and withholding of royalties based on dues

owed. *See* Compl. ¶¶ 14-16; 21-27, 53.  Both of these allegedly deceptive acts, however, are

the basis for claims that involve the membership agreement here. *See supra* Section II(A)

(copyright claim); Section II(B) (contract claim).  In *Kirk*, the court dismissed a plaintiff's

claims under Section 349 as a matter of law where the allegations of "consumer fraud" related

to an attorney-client relationship, "which is essentially contractual in nature." *Kirk*, 532 F.

Supp. 2d at 591.  Similarly, here, Plaintiff has alleged a contractual relationship – not one

geared to the public at large.  The core of the dispute here relates to the terms Plaintiff and

other purported class members agreed to when they entrusted Defendants with custody of

their films.  This is not about the public at large, despite Plaintiff's arguments to the contrary.

Rather, the "deceptive acts" Plaintiff complains of are about the terms of the agreements that

were made between individual members and Defendants. *See Electra v. 59 Murray

Enterprises, Inc.*, 987 F.3d 233, 259 (2d Cir. 2021) ("The gravamen of Appellants' complaint

is that Appellees used their modeling images without their consent, a private dispute over a

private injury visited on the individuals portrayed in the photographs."); *Green v. Cap. One,

N.A.*, 557 F. Supp. 3d 441, 455 (S.D.N.Y. 2021) (concluding that allegations of deceptive acts

were not directed at consumers because allegations were "predicated on [the plaintiff's]

position that [the defendant] did not sufficiently consider information *specific to him* and his

particular account history").  Accordingly, Plaintiff has not alleged that Defendants' conduct

was directed at consumers, and therefore has failed to state a claim under Section 349.  Count II, Plaintiff's deceptive acts claim, is dismissed.

### E.  Common Law Unfair Competition

"A claim for unfair competition requires the pleading of facts giving rise to a plausible inference that the defendant, acting in bad faith, misappropriated the plaintiff's labor and expenditures to gain a commercial advantage or maliciously interfered with the plaintiff's good will." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015); *see also Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 761 (S.D.N.Y. 2021) ("[A] New York state law claim of unfair competition requires a showing of bad faith.").  Therefore, a plaintiff alleging a claim for unfair competition under New York law must allege "(1) actual confusion or a likelihood of confusion; and (2) the defendant's bad faith." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (quoting *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016)).  "If an unfair competition claim is based entirely on the same alleged conduct proscribed by contract . . . the unfair competition claim must be dismissed as duplicative of a breach claim . . . .  A defendant may breach an independent duty in tort, for purposes of an unfair competition claim, if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff." *Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 586 (S.D.N.Y. 2022) (internal quotation marks and citations omitted).

As an initial matter, once again, Plaintiff's tort claim is duplicative of her contract action.  Even if the alleged conduct here is not governed by the contract, however, Plaintiff has failed to allege bad faith on the part of Defendants.  Generally, evidence of intentional copying in trademark cases, for instance, implies bad faith.  *See, e.g., Franklin v. X Gear 101,*

*LLC*, No. 17-cv-06452 (GBD) (GWG), 2018 WL 3528731, at *14 (S.D.N.Y. July 23, 2018)

("Bad faith under New York law is presumed where the defendant intentionally copied the

plaintiff's mark." (internal quotation marks and citation omitted)); *Warner Bros. Inc. v. Am.

Broad. Cos., Inc.*, 720 F.2d 231, 246-47 (2d Cir. 1983) ("We have recognized that evidence of

intentional copying raises a presumption that a second comer intended to create a confusing

similarity of appearance and succeeded.").   However, here, the parties had a license under

which Defendants were permitted to rent Plaintiff's Film – even though the precise terms of

that license are in dispute.   Therefore, there is no real allegation of intentional infringement.

Moreover, for the same reasons that Plaintiff has failed to allege fraudulent intent, she fails to

allege bad faith.   Accordingly, Count IV, Plaintiff's unfair competition claim, is dismissed.

### F.  Trade Libel

"New York law sets a one-year statute of limitations for defamation and trade libel

claims."  *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263,

276 (S.D.N.Y. 2016) (citing N.Y. C.P.L.R. § 215(3)).   The statute of limitations begins to toll

at the date of publication – "however widespread its distribution" – of a single defamatory

statement.  *Id.*  Defendants argue that the "digital derivative" that is the subject of Plaintiff's

claim of trade libel was rented, and therefore displayed, only through January 20, 2020.  Br. at

14 (citing Compl. ¶17).   Therefore, any allegedly libelous statement about Plaintiff's

authorization of that work necessarily occurred prior to that date.  *Id.*  Plaintiff does not

dispute that this means her claim does not survive the statute of limitations.  Opp. at 16.

Therefore, Count III, Plaintiff's trade libel claim, is dismissed.

Plaintiff's contention that the claim should survive as to the other class members is

unavailing.  *Id.*  "Absent certification by a court and identification of the class, the action is

not properly a class action within the meaning of Rule 23(c)(1) and (c)(3)." *Rittmaster v.*

*PaineWebber Grp. (In re PaineWebber Ltd. P'shps Litig.)*, 147 F.3d 132, 138 (2d Cir. 1998); *Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1 (1976) ("Without . . . certification and identification of the class [under Rule 23], the action is not properly a class action.").  When a named plaintiff's claim is dismissed prior to class certification, the Court lacks jurisdiction over the putative class action claims.  *See Lin v. Canada Goose US, Inc.*, No. 21-cv-07614 (LGS), 2022 WL 16926312, at *9 (S.D.N.Y. Nov. 14, 2022) (collecting cases) ("Because all of Plaintiff's individual claims are dismissed, the Court lacks jurisdiction over the putative class claims, which allege violations of various state consumer protection laws.").  This is because "the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013) (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002)); *see also Jackson v. Caribbean Cruise Line, Inc.*, No. 14-cv-02485 (ADS) (AKT), 2017 WL 9482238, at *3 (E.D.N.Y. Jan. 21, 2017) ("The complaint only includes a cause of action made by the Plaintiff.  There are currently no causes of action filed by a class.  Therefore, in the Court's view, it does not have jurisdiction over any 'class claims.'"); *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-cv-01058 (KAM), 2012 WL 4482057, at *9 n.9 (E.D.N.Y. Sept. 26, 2012) (dismissing class action claims when named plaintiff failed to state a claim prior to class certification).  Because Plaintiff's trade libel claim is dismissed, and no class has been certified, the Court lacks jurisdiction over the putative class's claims for trade libel.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

DENIED in part.  Counts II, III, IV, and V are dismissed.  In addition, Defendants' conclusory

request for attorneys' fees and costs associated with this motion, pursuant to 17 U.S.C. § 505,

*see* Br. at 14, is DENIED.[6]

Dated: February 15, 2023
New York, New York

SO ORDERED.

_Jennifer Rochon_____

JENNIFER L. ROCHON
United States District Judge

---

[6] Under the Copyright Act, a district court has discretion to award reasonable attorney's fees.
17 U.S.C. § 505.